IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHRISTY GILES,                )
                              )
            Plaintiff,        )
                              )
v.                            )   Case No. CIV-08-420-KEW
                              )
BROOKDALE SENIOR LIVING, INC.,)
                              )
            Defendant.        )

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment filed June 26, 2009 (Docket Entry #31) as well as Plaintiff's Motion to Strike filed July 24, 2009 (Docket Entry #38). These motions are at issue, having had a timely response filed to them. Upon review and consideration of the parties' briefs and accompanying evidence, this Court renders this ruling.

Beginning in November of 2001, Plaintiff, a female, was employed by Defendant at its Sterling House of Durant, an assisted living facility. Beginning in early November of 2007, Plaintiff alleges she was subjected to unwelcome sexual advances by the Facility Director, Bill Jeter ("Jeter").

Plaintiff identifies five separate incidents of alleged harassment. She describes the events as follows: (1) In early November of 2007, Jeter came up behind Plaintiff as she was seated at a desk and began rubbing her shoulders. Plaintiff objected and Jeter stopped. (2) In mid-November of 2007, Jeter stated at an in-

service meeting with some 20 employees in attendance that it was a conflict for employees to work second jobs at other nursing homes. He then referenced Plaintiff having a second job "after hours on the street with her pantyhose and stiletto heels." (3) During an unspecified time and in front of two other female employees, Jeter again stated Plaintiff would have to "get her hose and shoes" because it was quitting time. Plaintiff objected to the remark. (4) On another occasion, Jeter rubbed Plaintiff's shoulders, which Plaintiff rebuked. (5) At the end of November or in early December of 2007, Plaintiff was experiencing chest pain while she was seated in her office. Jeter allegedly noticed Plaintiff's actions, entered her office, closed the door and, while holding Plaintiff's left arm, rubbed Plaintiff's breast or chest. Plaintiff pulled away and Jeter left her office.

All evaluations of summary judgment requests proceed under the same rubric of analysis. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

In its request for summary judgment, Defendant first contends Plaintiff's claim for sexual harassment based in Title VII must fail because Jeter's actions were not sufficiently pervasive. Title VII prohibits discrimination by an employer, "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). This discrimination includes the creation of a hostile work environment based upon the sex of the employee. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). A hostile work environment created by virtue of sexual

3

harassment requires an employee to show the "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and that the employee was targeted because of her gender. E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 798 (10th Cir. 2007)(citations omitted). "[T]he pervasiveness of the hostility 'is quintessentially a question of fact' and thus particularly unsuited for resolution on a motion for judgment as a matter of law." Id. (citations omitted).

In this case, this Court finds the conduct is sufficiently pervasive for a reasonable jury to conclude Plaintiff was subjected to a hostile work environment. Defendant makes much of the fact Plaintiff made her wishes known to Jeter and the incidents ceased. However, Plaintiff's rejection did not deter Jeter from progressing to addition instances of harassment throughout the months of November and December of 2007. Summary judgment would be inappropriate in this case on this basis.

Defendant next contends any allegations concerning *quid pro quo* harassment should be dismissed due to a lack of evidence of such activity. While it is unclear from her response whether Plaintiff continues to maintain this claim originally stated in her Complaint, Defendant is correct that the record is devoid of any

evidence of *quid pro quo* harassment.

Defendant also asserts the defense stated in the case of the Faragher v. City of Boca Raton, 524 U.S. 775 (1998). Namely, Plaintiff failed to avail herself of the written harassment policy Defendant had in place during Plaintiff's employment. Defendant would be entitled to the Faragher defense if it demonstrated "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807. Defendant's harassment policy provided for reporting complaints of harassment to any department manager or executive director, human resources manager, director of human resources, regional director of operations, vice president of operations, senior vice president of human resources, or a dedicated telephone line.

Plaintiff contends she reported Jeter's activities on January 11, 2008 to regional sales manager Mandy Grimes ("Grimes"). Plaintiff testified at deposition that Grimes told her she would inform Jeter's supervisor regional sales manager Caryl Ridgeway ("Ridgeway") about Plaintiff's complaint. Ridgeway, Plaintiff asserts, was then charged with investigating Plaintiff's

complaints.[1]

By informing Grimes of Jeter's incidents of sexual harassment, Plaintiff appears to have complied with Defendant's harassment policy. Grimes could reasonably have been considered a "department manager" sufficient to have informed the company. Indeed, Defendant obviously considered the harassment "reported" by then assigning Ridgeway to investigate the harassment. The question then turns on whether Defendant took reasonable measures to end the harassment.

Plaintiff contends Ridgeway suggested Jeter hold an off-site managers meeting, which would have included Plaintiff, recommending the use of a book, "The Five Dysfunctions of a Team." Ridgeway then allegedly spoke with Plaintiff about her complaints, asking her if she had worn provocative clothing or led Jeter on in a sexual manner. Ridgeway never interviewed Jeter about Plaintiff's complaints as a part of the investigation. According to Plaintiff, the only contact with Jeter by anyone from Defendant concerning Plaintiff's allegations occurred by a human resources representative who asked Jeter at an out of town function if he had done anything which might be interpreted as sexual harassment of

---

[1] This Court acknowledges Defendant's contention first raised in its reply that Grimes denies Plaintiff informed her of the shoulder rubbing incidents. This disputed fact would further dissuade this Court from finding summary judgment as a proper vehicle for the resolution of this case.

Plaintiff - a conversation lasting about 90 seconds.

Giving Plaintiff's version of the facts all inferences to which they are due, a reasonable jury could conclude Defendant conducted a less than full investigation of Plaintiff's allegations. Further, no apparent action was taken to either counsel Jeter about his alleged actions or to insure further incidents did not take place. Summary judgment on this claim is once again inappropriate.

Defendant also seeks summary judgment on Plaintiff's claim of retaliation based upon engaging in the protected activity of reporting sexual harassment. While Defendant contends this activity is part and parcel of the hostile work environment claim, Plaintiff provides additional facts which indicate separate acts of retaliation occurred by the company after the reporting of the incidents of Jeter's alleged harassment which would give rise to a retaliation claim. The aforementioned managers meeting occurred on February 11, 2008. Plaintiff alleges Jeter prepared a memorandum and document entitled "Issues to Discuss with Christi [Giles]" between February 11, 2008 and February 28, 2008.

On February 29, 2008, Plaintiff was placed on a "Performance Improvement Plan," ("PIP") a "traditional final step before [Defendant] separates an employee from her employment." Plaintiff met with Grimes and Jeter about the PIP. Plaintiff contends Grimes

told her Jeter was setting her up for failure with the PIP because it required more work than she could perform. Grimes altered the terms of the PIP to a more reasonable level. Defendant contends the PIP was put into place because of the decreasing census in the Durant location. However, considering the timing of the implementation of the PIP and the favorable job performance evaluations received by Plaintiff from Defendant prior to the reporting of the harassment, a reasonable jury could conclude the actions taken by Defendant constituted retaliation. It could also conclude the action was reasonable in light of Plaintiff's job performance in her relatively new position as a Community Sales Representative. Such alternative interpretation of the facts begs for the evaluation by a jury rather than this Court.

Defendant also asserts Plaintiff's claim for retaliation for engaging in the protected activity of filing an EEOC charge should be dismissed because Plaintiff was not terminated from her employment, although there were admitted plans to terminate her. Plaintiff received an EEOC charge on March 13, 2008. She contends Defendant became aware of the charge on or about March 21, 2008. On that date, Plaintiff was formally disciplined for misuse of a company cell phone and not having her shirt tucked into her slacks occurring January 17, 2008. Jeter admitted he was aware of the EEOC charge when these acts of discipline were instituted.

Plaintiff contends Jeter referred to her sexual harassment complaints during this same time.

Plaintiff was permitted to take FMLA leave on March 25, 2008 and was out for five weeks with panic attacks. She allegedly sought treatment. When she returned to her employment with Defendant on April 29, 2008, she was called into the office with Jeter and others and told to talk with a human resources representative on the telephone. She alleges the representative told her she was terminated for neglecting residents. Plaintiff had allegedly cancelled a financial planning seminar while on FMLA leave. Plaintiff alleges she took no action to cancel the seminar but rather the participants cancelled it because Plaintiff was on leave. It appears the entire set of facts surrounding Plaintiff's termination are in dispute, making summary judgment inappropriate.

The final argument raised by Defendant concerns whether punitive damages are appropriate in this case. Until the full facts are vetted at trial, this Court is reluctant to determine whether the evidence indicates "malice" or "reckless indifference" on the part of Defendant in addressing Plaintiff's allegations of harassment at this time.

This Court has examined Defendant's reply brief and finds no basis to strike any of its content. To the extent the issue of pretext is raised, it is an appropriate part of the McDonnell

Douglas burden shifting analysis without necessarily being raised as an affirmative defense.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike filed July 24, 2009 (Docket Entry #38) is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment filed June 26, 2009 (Docket Entry #31) is hereby **GRANTED**, in part, in that any claim for *quid pro quo* sexual harassment is **DISMISSED**. However, the remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this 13th day of August, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE